The next case is number 23-1165, Natal Cosenza v. City of Worcester, MA At this time, would counsel for the appellant introduce himself on the record? Good morning, Your Honor. Steve Arkin, for the Act of Section 7. And are you going to reserve any time for rebuttal? Five minutes, Your Honor. Go ahead. Yes, five minutes. Good afternoon, and may it please the Court. A jury has already decided in this case that Worcester police officers violated Cosenza's constitutional rights and caused his wrongful conviction when they suppressed and fabricated evidence during his criminal case. What do you mean, fabricated evidence? When they fabricated a tainted identification and bolstered an identification from the victim. I beg your pardon. Is that different than your photo array and your Brady claim? Or is it a repackaging of those two claims? Well, so there is a fabrication claim that is based on the identification. There is a suppression claim that is based on the identification. The individual officers... Is there anything beyond those two? Yes, Your Honor. There is a suppression of the fact that the officers fed to the victim information after the identification about Mr. Cosenza. And there's the suppression of the fact... You better explain that. So at the jury trial, the contention was that the officers had suppressed that after they performed their photo identification procedure for which the district court decided they would have qualified immunity because there was not clearly established law. That claim didn't get put to the jury. Answer the question. Yes, Your Honor. So the officers suppressed that after the photo identification occurred, they told the witness information about Cosenza in order to bolster her identification and to make it appear more credible. Not courtroom identification. No, Your Honor. Like directly after the photo array. Oh, okay. Right? So the photo array occurs. It's suggestive. That's the fabrication. The officers then provide information about Cosenza to bolster that identification. Got it. And a jury finds... I had asked you if you have fabrication evidence that was independent of the photo array and the Brady violation. Yes, on the shorts, Your Honor. There's fabrication of evidence and suppression of evidence there. And what happens with the shorts is that the shorts are discovered by the victim in her apartment. They have seminal material on them. The DNA from the shorts shows that Cosenza is not the perpetrator of the crime. The victim turns the shorts in to the officers, and much later in time, the officers write a police report, and the police report says, I looked for those shorts at the scene and did not find them. They must have showed up afterwards. Right? So there's a suppression of the fact that, in fact, the officer did not look for the shorts at the scene, that the shorts were produced by the victim, and then there's the fabrication of the report much later. So those are the... Was it said to the jury that the testing of the shorts that were found was not consistent with the defendant's DNA? Correct, Your Honor. And the jury found that material to the criminal case, and the jury found in Cosenza's favor on the due process claims against Hazel Hurst on both of those theories, Your Honor. And so that judgment is in place, and it cannot and is not challenged in this appeal. The only question in this appeal... No, I'm still... I'm back on the fabrication, just because I still don't understand. If the jury was told the shorts that were found did not have the defendant's DNA, what is the issue? The fabrication, Your Honor, is the cover story that the officer makes up. I'm sorry, what? So let me be as clear as I possibly can about it. So the shorts... So you're saying that if the jury had disbelieved that the officers had searched earlier and they were given the information that they weren't the defendant's shorts anyway, they wouldn't have convicted? Correct, Your Honor, because they would have credited that DNA evidence in that case, right? And so the fabrication... Okay, is there anything else to the fabrication? Or suppression? No, Your Honor. Those are the theories that went to the jury. Okay, thank you. Now proceed. Okay, the jury also heard a theory that the witness identification that was introduced at trial was obtained by unduly suggested procedures. That was a necessary finding for the jury to find that Cosenza had been wrongly convicted and was entitled to damages. Okay, we're here on the Minnell issue. Yes, Your Honor. Okay, are you pressing on appeal your express policy argument which you made to the district court? Our argument about policy is that Worcester had actual notice of the need for... Answer my question. It is not an express policy theory in the sense that a policy that was unconstitutional... All right, so you've abandoned that part of your argument. It was never our theory below either, Your Honor. The district court said it was and said it didn't exist independently of the failure to train argument. I'm trying to understand what we have on appeal. Yes, could you address that specific whether the policy argument is independent of the failure to train? It seems to me they're linked together. I mean, we think that they are linked in the sense that there is overlapping proof, the evidence of notice for the need for policy and the need for training is the same, but there are distinct theories of Minnell liability. One theory is a theory that if a municipality is on actual notice, that policy is needed in a particular area of police investigation, actual notice, not constructive notice by a pattern, but actual notice, then the municipality has an obligation to make that policy, and if it does not, it is deliberately indifferent. And if constitutional violations... You mentioned pattern and practice, correct? Correct, Your Honor, but this is the evidence of pattern and practice. This is not a pattern and practice case whatsoever. This is a case where there is actual evidence of notice to Worcester. Wouldn't a failure to maintain a policy or to have a policy necessarily fall into the failure to train bucket? They are so close, Your Honor, that I don't want to push back too hard against that idea. In the courts of appeals that have patterned civil instructions for civil rights claims, they separate out the failure to train claims because the Supreme Court has focused on them in this way and said the need for the training needs to be obvious for some reason. I don't think the obviousness component comes into play when it's an absence of policy. I think you have to show notice to the municipality and then a failure to adopt policy to really get the deliberate indifference that's needed to prove a Monell claim. But granted, they are...  You're saying, then, that the case is not governed by the deliberate indifference standard? Not at all, Your Honor. It's absolutely governed by the deliberate indifference standard. And you're saying it is not a pattern or practice case which would have put the city of Worcester on notice. It is a single-episode case as to which you have to show it was perfectly obvious to the city that they should have trained. Are we agreed thus far? Yes, Your Honor. Okay. What makes it perfectly obvious? Let me discuss the evidence of notice that the city had. One, it had to adopt binding policies to govern police in these areas. And two, that it had to train. I'm sorry. Say that again because the perfectly obvious prong doesn't seem to fit into what you just said. On the absence of policy theory, I think what we are required to show is notice to the municipality that it needed policy to govern. No, no, no. I thought that the city evidence was it had some policies. It had some training in the form of a handbook and on-the-job training. So we're in a failure-to-train mode. That's incorrect, Your Honor. There are absolutely no policies whatsoever on these subjects. There is no policy manual produced in this litigation on any subject.  On the subjects of Brady and disclosure of evidence and the conduct of eyewitness identifications and witness interviews. But there are no written policies produced by Worcester in this case. There is an admission in their brief that they have no written policy on ID procedure or witness interviews at page 45 of their brief. There is no Brady policy at all in the case. They don't even discuss the absence of a Brady policy in their brief. So there are no policies. And similarly, the record reflects absolutely no training. This is not like Young where this court said there was a dispute of fact about whether the officers had been trained or not. This is a case where there is an admission that there is no training in the record. All that Worcester points to is training from 2004 after the events at issue in this case. So there's no policies and there's no training. And there's plenty of notice that made it obvious to Worcester that the training and the written policies were needed. The 30B6 witness admits that they had this policy manual that was supposed to provide guidance, but it doesn't provide guidance on any of the relevant subjects. What is the notice? Can you tell us the notice? If I can run through quickly the list of evidence, and I'll reserve less time, Your Honor, for rebuttal. So the 30B6 witness admits that there is actual notice of the need for policies and training in those particular areas. There was a written policy manual. It was intended to guide officers. It was approved by the chief of police under his authority. It just excluded policies on Brady disclosure, eyewitness IDs, and witness interviews. They emphasized throughout their briefs that they had preferred practices. That is an admission that they knew there was a need for policy. The argument on the other side isn't we had no need for these policies. It's we provided these preferred practices. But the preferred practices were not binding. There are nationally accepted standards in 1990 that required departments, and departments across the United States were enacting policies in these areas. There's model police standards that direct policies in these areas from the International Association of the Chiefs of Police and from the DOJ. Our experts' opinion in this case is that by 2000, the inherent dangers and damage to innocent parties were known when these standards were not promulgated and the subject of training. And there's the background law, Your Honor, that made clear decades before 2000. This is not some ancient case where we're wondering, was it clear, you know, back in the 1950s or 60s. This is a case where the Supreme Court and this court had made clear in many, many decisions the need to provide for police departments to have policies that guaranteed the disclosure of evidence, that guaranteed the... It's not clear to me whether you are arguing that the absence of a written policy specifically outlining photo arrays is what's at issue, or whether you're saying that the law, which has developed since, which says certain types of photo arrays are not acceptable, these are the practices you should be following, whether you're making the latter argument that that was what there was a failure to have policies on and train on. To be clear, we are saying there's a failure to have policies and to train on three subjects. One, the... You're not answering my question. And let's narrow it to the photo identifications, because I think... On photo identifications, our contention is that you have to have some policy at the time, and it was established in police departments across the United States at the time, that you have to have some policy governing the conduct of identification procedures and ensuring that they are fairly conducted. It is not, as Your Honor says, the latter point that eyewitness science has developed. Can you tell me what the causal link is that if they had had such policies, the photo array used here would not have happened as it did? Exactly, Your Honor. The photo array would not... That's not obvious. What is the... Had they had a policy, and I well have said that the procedures used here were the procedures to be used. I mean, I suppose that is an argument that you could make to a jury in the Monell trial in this case. Let me try... Can I try to ask that a little bit differently? So we're on summary judgment here, right, for the Monell claim, and we do view the evidence in the light most favorable to your client. You need to show both deliberate indifference and causation, and I'm focusing in on the causation. While we know your expert testified that there were national standards in 2000 when this happened, and I think that expert probably said at least two of those standards weren't followed here. Correct, Your Honor. Would that have made a difference in this case? Like, what is your argument on causation? And some of this is because we know the science has changed dramatically in the last 25 years, but focus in on the evidence we have here. Right. So our contention is had they had any policy governing the conduct of identification procedures, it would have ensured that they weren't confirming the witness's identification after the fact and feeding the witness information to bolster that identification to make it appear legitimate in court. Both of our questions go to what the content would have been of any policy that you say should have been... At the time, double-blind procedures, fairly constructed photo arrays that aren't arrays constructed around the suspect in question, not directing the witness to particular individuals... Is that what your expert said? I know that's guidance in a sort of more modern setting, but in 2000... I see I'm out of time. May I answer, Your Honor? Please answer this one. Yes, absolutely. That is the law in effect at 2000 based on the International Chiefs of Police Guidelines and the DOJ report that came out in 1999. While we're on the topic, what do you do about our case? I think it's the Wilkins case, which was Walker v. Medeiros, the 2018 habeas case, which says flatly that the U.S. Constitution during this time period did not, as a matter of due process, compel that the polygraph, the photo arrays, be done in the ways you just articulated. I guess I would say, Your Honor, that the Supreme Court long before that had made clear that photo identification procedures in Simmons cannot be conducted the way they were in this case, and what we are required to prove here is that... No, in Walker, we rejected that contention. And I suppose if that contention means that... And that's the law binding this circuit. If there's no due process claim for unduly suggestive identification procedures in the First Circuit, then obviously we can't have the Monell claim based on that same theory, but we would still have the Monell claim based on the failure to have a policy in Brady disclosure, which was clearly established long before 2000. Got it. Thank you very much. Thank you, Your Honor. You have two minutes for rebuttal. Thank you, Judge. Okay, let's hear from Counsel Rattigan. Good afternoon, Your Honors. Douglas Rattigan for the appellee, the City of Worcester. May it please the Court, I'd like to start kind of where my brother left off, which is part of the argument you've heard here, Your Honor, is a conflating of what the trial record was with respect to what this appellate record should be. The only issue on this appeal is whether the District Court properly granted the City's motion for summary judgment. Anything else that occurred after that is entirely irrelevant to these proceedings. Counsel. Yes, Your Honor. Have our questions gone to that issue? Perhaps you'd like to turn your attention to the questions which we have been asking, which focus on the claim that your training materials, because the writings at the time did not cover these two topics, even in general terms, the topics being how to conduct a photo array and then your Brady obligations. And maybe specifically what specific policies and or trainings were in place in 2000, if you are claiming that there were any. Your Honor, respectfully, with what was in the summary judgment record, there was testimony from the 30B6 designee that there was an 800- to 900-page training manual that was part of the academy process. Candidates went through... Does that training manual have specific training on photo identification? Your Honor, unfortunately, on this record, it wasn't part of the underlying case and it was not addressed prior to the summary judgment. Well, the training manual is in the record, right? It is not, Your Honor. What is in the record is the 30B6 testimony of the city of Worcester who testifies with respect to what the training manual was, what the process and what the training was that a police officer would undergo in 2000. Okay, tell us what that evidence is. Well, let me just... Before you add that, I believe there was something in the record that I read that manuals were just given out to the police officers. It's like, you read them, it's code of honor, get ready, and then learn as you go. So add that to your answer. It's a little bit more than that, Your Honor. So Worcester provided officers with police academy training. The identifications were taught in 1994, but not a heavily weighted course that was acknowledged by the designee. They were specifically taught not to make suggestive actions prior to the identification. It's part of the Record Appendix 1682. There was training on interviewing witnesses and victims, 1682 again. Worcester had policies regarding on how to conduct a witness interview, how to interview a suspect, how to interview a victim. There were preferred practices. Those preferred practices came about as a consequence of mentoring and on-the-job training that occurred between younger officers. You were giving us helpful record sites. Could you give us a few more? Of course. Your Honor, the primary testimony from Worcester's 30B6 designee, John Towns, is in the Record Appendix around 1681 and continues, Your Honor, until about 1708. So the only specific thing I've heard you say is that at page 1682, there was a policy that you don't make suggestive actions when doing a photo identification. There were more policies. There were preferred practices. And there's a distinction here that was addressed in the deposition, Your Honors, which was there was a distinction that the designee was harping on, which was the difference between a written policy or procedure versus a preferred practice. Preferred practices were practices that were taught to all the police officers both at the academy and on-the-job training. It wasn't a formal process, but as he testified, as Officer Towns testified, it was a consistent practice that allowed some wiggle room. His words, not mine, but it underlined what had to be done with respect to photo arrays. Importantly, with respect to the photo array that's at issue here, Your Honors, is the fact that this photo array was challenged in the underlying criminal case and the motion judge allowed that photo array to go forward, as well as Mr. Cassenza's subsequent conviction was also affirmed by this court. Directly at issue in both those issues was the appropriateness of that photo array, what it showed in terms of the photos that were done, and all the circumstances around it. I'm sorry to keep harping on this, but I'm sort of thinking about when we draft an opinion, how we do that. At some point, we're going to say either the city of Worcester had policies and here's what they were, or they didn't. Do we base that conclusion solely on the 30B6 witness? Your Honor, with respect to where we are, we're here on a motion for summary judgment.  It was my brother's obligation to put the evidence in to show that there was a question of fact. What I'm focused on, Your Honor, is the fact that, although my brother directs this court now to the evidence that was at trial, that was not the evidence that was part of the summary judgment. No, I understand that. I understand your argument on that. His argument was he put in expert testimony at the time, and you may have had written policies, but your 30B6 witness did not characterize those policies as going to what they should have gone to given the training standards at the time. That's right, Your Honor. But what we don't have here, and this is akin to the case in Gray, Your Honor, which is we have expert testimony which is admittedly conclusory and is not based on facts. There is no evidence in the record that any city policymaker exercised any deliberate indifference with respect to this. There's no evidence whatsoever that the photo array, other than the expert opinion, there's nothing here. This case is exactly like Gray, Your Honors. Otherwise, to go back and look at it the other way, Your Honor, it would be setting aside the very stringent standard that deliberate indifference that particularly directs this court under Monell and its project. The Supreme Court is very careful that these cases are not supposed to be a hindsight view of an unfortunate constitutional violation of an individual's actions. Do you agree that Costanza's constitutional rights were violated here, or is your argument solely focused on that second element of the Monell claim, that the violation wasn't caused by the city? Your Honor, with respect to where we are today, because the underlying trial did go forward to a jury verdict, we did not contend that there was not a violation. I think we're talking about two different time periods. Under the present standards, you are not, at this point, contending there was no constitutional violation. That's correct. All right. But I thought I heard you say earlier that during the original criminal proceedings judged by the constitutional standards at that time, both the trial judge and on appeal found no constitutional violations in light of the standards at that time. That's correct. And what I'm trying to address is the disconnect between a jury verdict that obviously went forward against the individual officers at a later date, although the race judicata effect of such a decision, I think, is something that would require additional attention from the lower court because the result of that case was an assignment of those rights of the officer and a dismissal of a timely appeal. And so to the extent that that's settled law, I think that's still an open issue because we're not looking now in what my brother suggests, applying race judicata in a defensive way. He's applying it in an offensive way. And I think that's a distinction here because but for the fact that an assignment occurred, again, not part of this record, but for the fact that that occurred, there would have been an appeal as to whether or not there were... Yeah, but that did not happen, so it's just speculation of what would happen on appeal. It didn't, Your Honor, but the fact that it was done based on an assignment and not on a decision from this court, I think that may have weight. Anything else, counsel? Yeah, I want to go back to my difficulty, and counsel was good at bearing with me, on the notion that there was some fabrication of evidence because he disbelieved the police testimony that they had searched and found no underpants. And they did find underpants later, and the police concluded, well, somebody else left them there, and that was supported by the DNA evidence. So what are we to make of that argument? Well, Your Honor, respectfully, with respect to why we're here today, it's irrelevant. That's something that occurred at trial. It wasn't part of the summary judgment record. Now, with respect to my brother's description of what occurred, that, of course, is contested. It was a presented issue in both the criminal trial as well as in the civil case. Well, what I'm struggling for is how it relates to the failure to train claim. Well, I think the issue, Your Honor, is no one's alleging that there was a policy to conceal evidence or to omit appropriate evidence. No one's made that allegation. My brother hasn't made that allegation. This boils down to a failure to train, and whether or not there was an omission of a policy with respect to a photo identification by the city of Worcester. The deliberate and different standard, and then again looking at the causation issue, which I think is the second prong that's important for this Court's analysis, which is based on the jury's... No, before you even get there, isn't there the intervening step of whether this was a deliberate policy choice by decision-makers with authority? That's right, Your Honor, which is there's no evidence that we're even addressing the deliberate and different, which is a very high standard. So just a question here. What is the evidence about the police chief or anyone above the police chief approving such training as there was? The only evidence in the record, Your Honor, is the evidence of the 30B6 designee. There is no evidence that shows that there was actual knowledge of a need for policy that would satisfy a deliberate and different prong. That would have been Mr. Cassenza's obligation. You've misapprehended. I was asking about a deliberate policy choice by the city officials who had authority. I asked what the evidence was about whether the police chief or someone above him had adopted such training procedures as existed. There is no evidence that the city affirmatively chose not to have a policy. So just help me with Massachusetts law. So there's a requirement they go to the police academy. That's correct, Your Honor. And that is a state law? It is. And it is the state which makes the decision as to what is taught at the police academy? That's correct as well, Your Honor. And not the municipal officials from the town which sends the police to the police academy? That's correct, Your Honor. However, the town is responsible for, sorry, the decision as to the on-the-job training is a town decision, whether or not it was made by policymakers for the town. It is done at the town level. It is, and, Your Honor, I think that the case of Santiago v. Fenton in the First Circuit is instructive on these points. That's a case where there were no tribal facts on issue of deliberate indifference in failure to train, even when the officer never received a policy manual, and the only evidence in terms of the training that the officer received was four hours of training. And the court in Santiago specifically found that even only four hours of training, without more, does not amount to conscious policy or to training inadequately. Okay. Thank you. Thank you, Your Honor. Okay. Two minutes rebuttal, counsel. Please identify yourself. Thank you, Your Honor. I'm Steve Arfanac-Asenza. So even if we put the suggestive I.D. totally out of the case, there would be a claim here for the city's failure to have policy and training on the obligation to disclose evidence under Brady. That is absolutely clear. I want to respond to the idea that there was training or policies, even remotely touching on these subjects. There is no such evidence in the record. The preferred practices, the 30 v. 6 witness testified at 1688, were not binding policies. The manual that supposedly existed but has not been. Hasn't that hurt you? No, not at all, Your Honor. What they're saying is that we had some policy to guide our officers in this area. And their 30 v. 6 witness testifies wasn't binding on the officers at all. So that helps us because the city is not. It may help you on the they should have had training, but it hurts you on the it was a deliberate policy choice by the policy makers. Your Honor, I think the point here is that there is notice to the chief of police that they need policies in this area. The 30 v. 6 witness admits that. There were standards at the time. Got it, got it. And there is no response to that, and that is the deliberate indifference. On the point about training, there is no evidence of training in the record. No, then you would have to show it was a deliberate policy choice by the policy makers not to have additional training. And it would have to be Worcester policy makers. What is the evidence of that? The evidence, Your Honor, is that in these areas it had notice of the need for training from this court's cases, from the Supreme Court's cases, from national standards. You're not answering my question. What I'm trying to say, Your Honor, is that the notice of the need for these particular areas in common important parts. It was perfectly obvious to the city fathers of Worcester that they needed to adopt these policies, and therefore we can conclude the failure to adopt was an official policy. May I answer, Your Honor? Yes. At least there is on the evidence a genuine dispute of fact that requires a jury trial on that issue. Okay. Thank you. Thank you. Thank you, Your Honors. Court is adjourned.